**IN THE COURT OF APPEALS OF IOWA**

No. 25-0764
Filed July 23, 2025

**IN THE INTEREST OF N.W., P.W., H.W., and A.S.,**
**Minor Children,**

**A.L., Mother,**
　　Appellant,

**A.S., Father,**
　　Appellant.
_____

　　Appeal from the Iowa District Court for Montgomery County, Ashley West-Joons, Judge.


　　Parents separately appeal the termination of their parental rights. **AFFIRMED ON BOTH APPEALS.**


　　Katie E. Johnson of Katie Johnson Law, Council Bluffs, for appellant mother.

　　Eric A. Checketts of Checketts Law, PLC, Glenwood, for appellant father.

　　Brenna Bird, Attorney General, and Tamara Knight, Assistant Attorney General, for appellee State.

　　Ivan E. Miller of Billings & Mensen, Red Oak, attorney and guardian ad litem for minor children.

　　Considered without oral argument by Schumacher, P.J., and Buller and Sandy, JJ.

**BULLER, Judge.**

The mother of four children (born 2014, 2015, 2017, and 2022) appeals the termination of her parental rights. The father of the youngest child separately appeals termination of his parental rights. The legal and alleged fathers of the other three children did not appeal termination of their rights. On our review, we affirm both appeals.

**Background Facts and Proceedings.** For most of 2023, the family cycled through child abuse investigations conducted by the Iowa Department of Health and Human Services (HHS)—some founded and some not confirmed—for a variety of claims, including denial of critical care, allowing a sex offender access to the children, dangerous substances, failure to provide adequate shelter, and failure to provide supervision. In December 2023, the mother left the children at the local police department, saying she had been kicked out of her home, couldn't keep the children, and wanted to give up her rights. In front of the children, she told the police she didn't want them anymore. The children were placed with the paternal aunt of the older three children.

Early on, the mother attended some video visits, and she attended a few in-person visits in March and April 2024, but she stopped attending all in-person visits after her paramour was excluded from the visits because he was a registered sex offender. The mother moved halfway across the state and continued her relationship with the sex-offender paramour—despite him abusing her. She also lied to her social worker about that relationship and turned down housing options that were within sex-offender exclusion zones. The last time the mother saw the children was a brief video visit in August, after which she did not participate in video

visits or see the children when she was in town. Her compliance with services to address substance-abuse, mental-health, employment, and housing problems was inconsistent, and she did not attend many of the meetings arranged with her social workers. She also did not attend medical appointments or educational meetings for the children.

The father did not learn of HHS involvement until May 2024; HHS's earlier attempts to contact him were not successful due to his incarceration. The father didn't have stable employment or housing (aside from a period in a residential correctional facility) throughout the proceedings. He didn't complete any drug tests or the court-ordered substance-abuse and mental-health evaluations and treatment, though at trial he claimed to have completed evaluations while at the residential correctional facility. His participation in supervised visits with his child was sporadic, with a few in the summer, two in the fall, and some late-fall video visits. He did not respond to HHS's attempts to communicate with him or otherwise engage with HHS or services beyond his inconsistent visits. The father told HHS he "should not have to complete any of the recommendations."

The county attorney, HHS, and the children's guardian ad litem all recommended termination of both parents' rights at trial. And the juvenile court terminated both parents' rights. The mother and the father separately appeal, and we review de novo. *See In re W.M.*, 957 N.W.2d 305, 312 (Iowa 2021).

**Statutory Elements.** Although the juvenile court found facts sufficient to terminate each parent's rights under Iowa Code section 232.116(1)(b), (e), (f) (as to the older three children), and (h) (as to the youngest) (2025), its order only granted the State's petition to terminate each parent's rights under paragraph (b).

But we may affirm on any ground raised in the petition if supported by the record. *In re M.W.*, 876 N.W.2d 212, 221–22 (Iowa 2016) (ruling "the prevailing party in a termination-of-parental-rights action need not file a cross-appeal or a rule 1.904(2) motion to assert an alternative ground for affirmance on appeal that was raised before the juvenile court").

Even though we could affirm on other grounds, we find clear and convincing evidence to terminate each parent's rights under section 232.116(1)(b): "The court finds that there is clear and convincing evidence that the child has been abandoned or deserted."

To prove abandonment, the State had to prove "both the intention to abandon and the acts by which the intention is evidenced." Iowa Code § 232.2(1). Desertion includes relinquishing or surrendering parental rights, duties, or privileges for a period of six months or more. *Id.* § 232.2(15). "Proof of desertion need not include the intention to desert, but is evidenced by the lack of attempted contact with the child or by only incidental contact with the child." *Id.*

The mother argues that her actions at the police station were only intended to ask for housing help and that poor communication with the HHS workers hindered her maintaining contact with the children. She claims she "did not intend to abandon her four young children, and she did not perform acts by which that intention could be evidenced because she contends that she was asking for help." But, considering abandonment and desertion, we find the record before us shows no intention on the mother's part to assume any of the rights, duties, or privileges of being a parent to any of these children. She turned the children over to the police and HHS with the professed intention of no longer caring for them (even if

she now disputes this). She had not seen or spoken to the children in more than six months, despite the offer of video visits when she struggled with transportation. She provided no financial, emotional, or physical assistance to the children's care, including no attention to the children's health, behavioral, and educational needs. We find the mother's acts—or more accurately, failures to act—evidence an intention to abandon the children. *See In re C.B.*, No. 24-1898, 2025 WL 407206, at *2 (Iowa Ct. App. Feb. 5, 2025) ("[The mother's] lack of action reflects her intent to relinquish her relationship with the children."). The State proved the statutory ground for termination under section 232.116(1)(b) as it pertains to the mother.

The father also claims to have not abandoned his child. He asserts he was "doing all within his capacity to fulfill his role as father" given his "extreme indigence" and that he never stated a wish or intent to abandon or desert the child. But desertion does not require an expressed intention, only that his action resulted in a lack of attempted or only incidental contact with the child. Even at the termination trial, he told the court "it wasn't fair" that he had to participate in evaluations and services because the mother could not care for his child, he "shouldn't have to engage in services," and that he "shouldn't have to do those things or be required to do those things just for [his child] when [he] had nothing to do with . . . what's going on." He was fully absent for the first six months of the proceedings (though at least partly due to incarceration). He never complied with services beyond the occasional visit—mostly via video—and never sought to assume any responsibility for the child, displayed no effort to become a better parent through offered services, did not provide any financial or other support, and has not cooperated with HHS to determine if he could be a safe placement. It

wasn't until trial—sixteen months after the case began—that he was finally "in an emotional state where [he was] ready to cooperate and get services." The father relinquished his parental rights, duties, and privileges for almost the child's entire life, showing little interest in the child's well-being and care, and with only incidental, inconsistent contact prompted by HHS. *See In re J.C.P.S.*, No. 13-0891, 2013 WL 4012555, at *2 (Iowa Ct. App. Aug. 7, 2013). Clear and convincing evidence shows the father deserted the child, and we conclude the State proved the statutory ground for termination of the father's parental rights under section 232.116(1)(b).

**Other Claims.** Each parent raises additional issues, some relating to the remaining steps of our three-step statutory framework. *See generally* Iowa Code § 232.116(1)–(3). We address each claim in turn.

The father contests the court finding termination of his parental rights is in the child's best interests. But his supporting "argument" just cites the parent-child bond permissive exception to termination under section 232.116(3)(c) and argues the father should have been given additional time to achieve reunification. Assuming without deciding these claims are sufficiently developed and that we can reach them, we discern no basis for reversal. First, the juvenile court found that the parents "complete lack of participation . . . shows that they cannot address any of [HHS]'s concerns," and termination was in the children's best interests. We agree. We see nothing in the father's conduct throughout this case or testimony that indicates he would be "the best placement for furthering the long-term nurturing and growth of the child" or to see to "the physical, mental, and emotional condition and needs of the child." *Id.* § 232.116(2). As to the permissive exception,

he did not argue or offer evidence to support a bond-exception claim at trial, and we find the issue waived on appeal. *See In re J.R.*, 20 N.W.3d 839, 843 (Iowa Ct. App. 2025) (en banc) (finding permissive exceptions waived when not addressed at the termination hearing with no evidence offered to support them). Finally, in his request for more time, we agree with the juvenile court's finding that "no evidence was presented related to specific factors, conditions, or expected behavioral changes that would comprise a basis for a determination that the need for removal of the child from the parent's care will no longer exist at the end of an additional six-month period." Iowa Code § 232.104(2)(b).

The mother also suggested the juvenile court should have applied the parent-child bond exception to termination. Again assuming without deciding this issue was adequately briefed, it is no basis for relief. The burden was on the mother to prove by "clear and convincing evidence that the termination would be detrimental to the child." *Id.* § 232.116(3)(c); *In re A.S.*, 906 N.W.2d 467, 475–76 (Iowa 2018). While marginally preserved through a passing reference at closing that "the kids are bonded to their mother," the mother presented no evidence for us to consider. She made no mention of a close bond during her testimony, cross-examination of caseworkers did not establish a bond, and she offered no outside evidence to support her claim. We find the mother did not prove a strong bond where severing the parent-child relationship would be more detrimental than not to the children's best interests, and thus she failed to meet her burden.

Last, the mother mentions in passing a lack of reasonable efforts to facilitate reunification, but she does not develop the argument or suggest any efforts HHS should have made. The father also challenges whether the State made

"reasonable reunification efforts," with no service suggestions beyond a general assertion HHS should have "maximiz[ed] contact between him and the child." "But section 232.116(1)(b) does not have a reasonable-efforts requirement." *In re M.D.*, No. 19-1912, 2020 WL 567320, at *1 (Iowa Ct. App. Feb. 5, 2020) (collecting cases). So both parents' claims fail as a matter of law. And even if reasonable efforts were required, neither parent participated in the services that were offered and did not show interest in or suggest any service that would "eliminate the need for removal" or "make it possible for the child to safely return" to their care. *See* Iowa Code § 232.102A(1)(a). We affirm the juvenile court's ruling as to each parent.

**AFFIRMED ON BOTH APPEALS.**